IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DRIVER OPPORTUNITY PARTNERS I, LP,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. RDB-20-2575** |
| **FIRST UNITED CORPORATION,** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

Plaintiff Driver Opportunity Partners I, LP ("Plaintiff" or "Driver") brings this tort action against Defendant First United Corporation ("First United") and individual Defendants John F. Barr, Brian R. Boal, M. Kathryn Burkey, Robert W. Kurtz, John W. McCullough, Elaine L. McDonald, Patricia Milon, Carissa L. Rodeheaver, Gary R. Ruddell, Marisa A. Shockley, I. Robert Rudy, and H. Andrew Walls, III (collectively, "Defendants"). Plaintiff alleges intentional interference with prospective business relations (Count VII) and unfair competition (Count VIII) against all Defendants, in addition to three counts of abuse of process (Counts II, III, IV) and two counts of defamation (Counts V and VI) against First United only. (Compl., ECF No. 1.) Plaintiff also alleges breach of fiduciary duty (Count I) and unjust enrichment (Count IX) against the individual Defendants. (*Id.*)

Presently pending is Defendants' Motion to Dismiss and Request for Hearing. (ECF No. 18.) On January 4, 2021, this Court conducted a motions hearing and heard argument on

the pending Motion.[1]   *See* Local Rule 105.6 (D. Md. 2018).   For the reasons stated on the record at the motions hearing, and for the reasons that follow, Defendants' Motion to Dismiss and Request for Hearing (ECF No. 18) shall be GRANTED IN PART and DENIED IN PART.   Specifically, Counts I, II, III, IV, VIII, and IX shall be DISMISSED, but the Motion to Dismiss is DENIED as to Counts V and VI, setting forth claims of defamation, and is DENIED as to Count VII, claiming intentional interference with prospective business relations.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).   The Court may consider only such sources outside the complaint that are, in effect, deemed to be part of the complaint, for example, documents incorporated into the complaint by reference and matters of which a court may take judicial notice.   *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Driver Opportunity Partners I, LP ("Driver") is a Delaware limited liability company formed in April 2019 as an investment fund.   (Compl. ¶ 1, ECF No. 1.)   Driver also has a general partner, Driver Management Company, LLC, whose managing member is J. Abbott Cooper.   (*Id.* n.3.)   Since August of 2019, Driver has been the beneficial owner of just under

---

[1] The Court also heard argument on the pending motion in the related declaratory judgment action filed by First United Corporation against Driver.   *See First United Corporation v. Driver Opportunity Partners I, LP, et al.*, Civil Action No. RDB-20-2592.   In that case, this Court certified a question of Maryland law to the Court of Appeals of Maryland and stayed the case pending a response from the Court of Appeals.   *See id.*, Certification Order, ECF No. 36.

5.1% of the outstanding shares of Defendant First United Corporation's ("First United") common stock. (*Id.*) Driver alleges it is one of the largest holders of First United's common stock. (*Id.*) First United is the publicly traded parent of the Maryland-chartered First United Bank & Trust, a depository institution in Garrett County, Maryland. (*Id.* ¶ 2.) As a bank holding company, First United is subject to regulatory oversight by the Maryland Commissioner of Financial Regulation (the "Commissioner"). (*Id.*) The following individual Defendants served as members of First United's board of directors during the period leading up to the June 11, 2020 First United annual meeting of shareholders: John F. Barr, Brian R. Boal, M. Kathryn Burkey, Robert W. Kurtz, John W. McCullough, Elaine L. McDonald, Carissa L. Rodeheaver, Gary R. Ruddell, Marisa A. Shockley, I. Robert Rudy, and H. Andrew Walls, III. (*Id.* ¶ 3.) After that annual meeting, Defendants Kurtz and McDonald resigned and Defendant Patricia Milon was appointed to the board. (*Id.*)

## I. The Parties' Dispute

Driver represents that it invests in publicly traded bank holding companies when it believes that the sale value of the company "far surpasses standalone value" and when the "major impediment to a sale that would significantly increase the value of all shareholders' investment is a board of directors with interests that are not aligned with shareholders." (Compl. ¶ 7.) In 2019, after conducting extensive research and analysis, Driver alleges it first raised concerns about First United's poor corporate governance, its prospects as a standalone enterprise, and whether First United's shareholders would be better served by selling to a larger banking organization. (Compl. ¶ 23.) Specifically, Driver criticized the board's excessive tenure, poor risk oversight, entrenchment and conflicts of interest. (*Id.*)

On or about March 15, 2019, Driver expressed all of these concerns to the CEO and Chair of First United's board, Carissa Rodeheaver, providing analyses illustrating that a sale could provide shareholders a significant premium over First United's then-trading price.  (*Id.* ¶¶ 13, 16.)  On or about March 26, 2019 and March 28, 2019, Driver publicly expressed its views regarding its concerns about First United by filing exempt solicitation materials with the United States Securities and Exchange Commission ("SEC").  (*Id.* ¶¶ 14-16.) Driver alleges other shareholders also called on the board to explore a sale.  (*Id.* ¶¶ 27, 31.)  First United allegedly ignored Driver's inquiries and concerns.  (*Id.* ¶ 17.)

On or about August 28, 2019, Driver purchased additional shares of First United, increasing its stake in the company from 4.970% to 5.005%.  (*Id.* ¶ 18.)  Driver disclosed this acquisition to the SEC a week later, as required by federal law.  (*Id.* (citing 17 C.F.R. § 240.13d-19(a)).)  Driver also issued a press release which raised the possibility of Driver's nominating candidates for director at First United's next annual meeting unless the Board took immediate steps to increase shareholder value.  (*Id.* ¶ 23.)  Driver alleges that, during the fourth quarter of 2019 and the first quarter of 2020, potential buyers attempted to pursue a transaction to acquire First United at around $28.00 per share, but Defendant Rodeheaver prevented any such transaction, asserting that First United "was not for sale."  (*Id.* ¶ 28.)

In response to both Driver's publicly expressed concerns and Driver's acquisition of more First United shares, Driver alleges that the directors of First United's board sought to "neutralize what they perceived as a threat to the status quo," and that the directors began a campaign to disenfranchise Driver.  (*Id.* ¶¶ 17, 20, 22, 26, 29-30, 80-89.)  Driver asserts First United executed its campaign by manipulating the Commissioner to open an investigation into

Driver's alleged violation of Section 3-314 of the Financial Institutions Article of the Annotated Code of Maryland. (*Id.* ¶¶ 60-70.) Section 3-314 provides that one who intends to acquire a controlling interest in a Maryland bank or bank holding company must first apply to the Commissioner for him to determine if the proposed acquisition is anticompetitive or a threat to the safety or soundness of the banking institution. (*Id.* ¶ 45 (citing Md. Code Ann., Fin. Inst. § 3-314(c)).) The statute does not define what percentage of stock ownership triggers its requirements. (*Id.*) Shareholders found in violation of Section 3-314 may not vote their shares for a period of 5 years. (*Id.*)

Driver alleges that, in October of 2019, company counsel for First United, Andrew Bulgin, confirmed with the Commissioner that Driver had not applied to the Commissioner before purchasing its shares of First United. (Compl. ¶¶ 65-67.) On or about November 1, 2019, Bulgin allegedly submitted a detailed complaint with exhibits to the Commissioner, asking him to open an investigation into Driver because Driver had "violated Section 3-314" and should be prohibited from voting its share for 5 years. (*Id.* ¶ 68.) On or about November 19, 2019, Driver announced publicly that it intended to nominate three candidates, Michael Driscoll, Lisa Narrell-Mead, and Ethan Elzen, to compete for seats on the board. (*Id.* ¶ 32.)

In January of 2020, First United allegedly enlisted political help from Maryland State Senator George Edwards, Garrett County Delegate Wendell Beitzel, and representatives from Governor Hogan's office to pressure the Commissioner into taking action against Driver. (*Id.* ¶¶ 96-98.) On or about January 21, 2020, Driver was notified that the Commissioner's office had opened an investigation under § 3-314 into Driver's purchase of First United stock. (*Id.* ¶ 99.) On or about January 22, 2020, Driver alleges that Defendant Rodeheaver and Mr.

Bulgin met with the Commissioner, the Secretary of Labor, Delegate Beitzel and representatives of the Governor to discuss the investigation of Driver.  (*Id.* ¶ 101.)

In its March 30, 2020 preliminary proxy statement, First United instructed shareholders that "[i]f Driver Management is ultimately prohibited from voting its shares of Common Stock or nominating the Driver Nominees, then any proxy that you deliver to Driver Management will be void and your vote will not be counted."  (*Id.* ¶¶ 79, 114.)  The SEC challenged this statement and required First United to remove it.  (*Id.*)  On April 7, 2020, First United's amended preliminary proxy statement cited the existence of the investigation as a reason to discount Driver's position, which the SEC also allegedly challenged.  (*Id.* ¶¶ 115-117.)  In its definitive proxy statement on April 17, 2020, First United stated that Driver was "currently being investigated" and maintained that if Driver was unable to vote, its nominations would not be valid.  (*Id.* ¶ 119.)  Driver alleges that First United never disclosed in any of its filings that it was the one to request, compile support for, and lobby the Commissioner to open the investigation against Driver.  Instead, Driver alleges that First United made multiple false or materially misleading statements to shareholders about First United's sponsorship of the investigation and the investigation's effect on Driver's shareholder status.  (*Id.* ¶¶ 127, 130, 141.)  On or about May 12, 2020, First United issued a press release stating, "[t]he fact is that Driver is under investigation by the [Commissioner] with respect to Driver's acquisitions of shares of First United in violation of Maryland law."  (*Id.* ¶ 123.)

## II. The Commissioner's Response and First United's Lawsuit

On May 14, 2020, the Commissioner wrote a letter to Driver advising that the Commissioner's staff was recommending a finding that Driver had violated § 3-314.  (*Id.* ¶

124.)  Driver maintains that the Commissioner did not reach any conclusions himself or make any findings but indicated that he would consult the state Attorney General's office as to what steps, if any, he should undertake.  (*Id.*)  The Commissioner sent a courtesy copy of the letter to First United.  (*Id.*)

On May 20, 2020, First United filed a declaratory judgment action against Driver and its director-nominees in the Circuit Court for Garrett County, Maryland, *First United Corp. v. Driver Opportunity Partners I LP, et al.*, which was later removed to this Court by Driver on September 8, 2020, bearing case number RDB-20-2592.  (*Id.* ¶ 135.)  Based on what First United perceived as a determination by the Commissioner of a violation of § 3-314, First United sought a declaration from the Circuit Court that Driver would be prohibited from casting votes at the June 11, 2020 annual meeting, that First United would not be required to count Driver's votes at the meeting, and that Driver could not exercise its voting shares for five years.  (*Id.* ¶¶ 136-139.)  The same day, First United filed a supplemental proxy statement with the SEC, asserting, *inter alia*, that the Commissioner "concluded…that there is sufficient evidence to find" that Driver violated § 3-314, that Driver cannot exercise its voting shares for five years, that First United did not instigate the investigation, that Driver "was found to be in violation of Maryland law," and that Driver was not operating "within the confines of the law."  (*Id.* ¶ 141.)

On May 22, 2020, the Commissioner and Driver reached a Settlement Agreement and the Commissioner closed his investigation, explaining that "nothing [in the this order] shall be construed to mean, or to authorize any individual or business entity to assert, that the Commissioner has made any conclusive findings or determination that [Driver] violated FI §

3-314."  (*Id.* ¶ 145; Settlement Agreement, Compl. Exhibit A ¶ 10, ECF No. 1-1.)  Under the Settlement Agreement, the Commissioner conditionally agreed to take no enforcement action against Driver and Driver agreed to, *inter alia*, reimburse the Commissioner's costs associated with the investigation in addition to providing notice to the Commissioner of any future acquisitions of shares in a Maryland chartered bank.  (*Id.*)  On May 25, 2020, Driver alleges it publicly posted a copy of the Settlement Agreement and requested that First United dismiss its declaratory judgment action.  (Compl. ¶ 149.)  First United refused to dismiss its case against Driver.  (*Id.*)

On June 1, 2020, ten days before the election, First United informed Driver that it would recognize Driver's voting rights as a shareholder only conditionally, and that First United would retain the "right" to invalidate Driver's votes pending the result of its lawsuit premised on its assertion that the Commissioner found Driver in violation of § 3-314.  (*Id.* ¶ 155.)  On June 11, 2020, First United conducted the election for four seats on its board, with First United's board-nominated candidates obtaining more votes than Driver's candidates. (*Id.* ¶¶ 157-158.)

### III. Procedural Background

First United initially filed its declaratory judgment action in the Circuit Court for Garrett County, Maryland on May 20, 2020 against Driver and Driver's candidates for the board.  On September 4, 2020, Driver filed the instant suit in this Court against First United and its current and former directors, alleging nine tort-related claims.  On September 8, 2020, Driver removed First United's state declaratory judgment suit to this Court.  *See First United Corp. v. Driver Opportunity Partners I LP, et al.*, Civil Action No. RDB-20-2592.

8

On October 21, 2020, First United filed the presently pending Motion to Dismiss in this case. (ECF No. 18.)   The Court held a joint telephonic motions hearing on January 5, 2021 to address pending motions in both cases.

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.   The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).   In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.   First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted

inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

Under Rule 9(b) of the Federal Rules of Civil Procedure, "a party must state with particularity the circumstances constituting fraud or mistake." A plaintiff "must plead 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation, and what he obtained thereby.'" *Edmondson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019). "Rule 9(b) refers to 'alleging fraud,' not to causes of action or elements of fraud." *Cozzarelli v. Inspire Pharm., Inc.*, 549 F.3d 618, 629 (4th Cir. 2008).

## ANALYSIS

Defendants seek to dismiss Driver's Complaint under Rule 12(b)(6) and Rule 9(b)[2], asserting that Driver has failed to state claims for breach of fiduciary duty (Count I); abuse of process (Counts II, III); malicious prosecution (Count IV); defamation and defamation *per se* (Counts V, VI); intentional interference with prospective business relations (Count VII)[3]; unfair competition (Count VIII); and unjust enrichment (Count IX). For the reasons stated on the record at the motions hearing, and for the reasons supplemented below, this Court finds that Plaintiff has failed to state a claim for breach of fiduciary duty (Count I); abuse of

---

[2] Defendants argue that the entirety of Plaintiff's Complaint fails to comply with the heightened pleading standard of Fed. R. Civ. P. 9(b). However, because Rule 9(b) applies only to allegations of "fraud or mistake," and because the only counts that contain such allegations are Count I alleging breach of fiduciary duty ("the Individual Defendants' wrongful actions were done maliciously, oppressively, and with intent to defraud") and Count VIII alleging unfair competition ("Defendants has [sic] engaged in unfair competition by damaging or jeopardizing Driver's business by fraud, deceit, trickery or unfair methods"), this Court will consider Rule 9(b) with respect to Counts I and VIII only.

[3] Plaintiff labelled this claim in its Complaint as "tortious interference with economic relations," but confirmed at the motions hearing that it intended to assert a claim under Maryland law for "intentional interference with prospective business relations."

process – regulatory (Count II); abuse of process – litigation (Count III); malicious prosecution – litigation (Count IV); unfair competition (Count VIII); and unjust enrichment (Count IX). Accordingly, Counts I, II, III, IV, VIII, and IX shall be dismissed and Counts V and VI, setting forth defamation claims, and Count VII, claiming intentional interference with prospective business relations, shall remain.[4]

## I. Breach of Fiduciary Duty (Count I)

Driver alleges that the individual director Defendants breached their fiduciary duty to Driver and other shareholders by acting in their own self-interest to retain their board seats. Specifically, Driver asserts that the director Defendants violated Md. Code Ann., Corp. & Ass'ns § 2-405.1, which requires directors to act "[i]n a manner the director reasonably believes to be in the best interests of the corporation; and [w]ith the care that an ordinarily prudent person in a like position would use under similar circumstances." To state a claim for breach of fiduciary duty, a plaintiff must show: "(i) the existence of a fiduciary relationship; (ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary." *Plank v. Cherneski*, 469 Md. 548, 599 (2020). In Maryland, the duties owed by a director of a corporation run directly to the company, and not to the shareholders. *See Werbowsky v. Collomb*, 362 Md. 581, 598-99 (2001) (obligations under § 2-405.1 "run[], however, to the corporation and not, at least directly, to the shareholders").

Here, Driver is asserting a direct suit against the individual directors, and not a derivative suit on behalf of the corporation, which is used to seek redress for injuries to the corporation. *See Werbowsky*, 362 Md. at 590. Driver argues, however, that it may bring its

---

[4] Counts V, VI, and VII will be renumbered as Counts I, II, and III respectively.

fiduciary duty claim directly against the directors based on the Maryland Court Appeals'
decision in *Shenker v. Laureate Education, Inc., et al.*, 411 Md. 317 (2009).  In *Shenker*, the Court
of Appeals recognized shareholders' right to bring a direct action for breach of fiduciary
duty against individual directors "in the context of a cash-out merger transaction, where the
decision to sell the corporation has already been made."  411 Md. at 336.  The Court of
Appeals most recently reiterated its narrow holding in *Plank v. Cherneski*, 469 Md. 548 (2020),
explaining that, in *Shenker*:

> We explained that, under the common law, in situations where the corporation
> was undergoing a change of control, "corporate directors owe their
> shareholders fiduciary duties of candor and maximization of shareholder
> value." [*Shenker*, 411 Md. at 341]. Accordingly, we held that, in the context of a
> cash-out merger transaction where the decision to sell the corporation had
> already been made, "shareholders may pursue direct claims against directors for
> breach of their fiduciary duties of candor and maximization of shareholder
> value." *Id.* at 342, 983 A.2d 408. In analyzing the shareholders' right to bring a
> direct action for breach of fiduciary duty, we also recognized that "the injury
> alleged, namely, a lesser value that shareholders received for their shares in the
> cash-out merger, is an injury suffered solely by the shareholders and not by [the
> corporation] as a corporate entity." *Id.* at 346, 983 A.2d 408.

469 Md. at 582-83.

As a result, Driver's allegations that the individual directors breached their duty by
attempting to disenfranchise Driver and devalue its voting stock does not fit within this limited
exception.  Even if Driver could assert a direct action against the individual directors, its
allegations nonetheless fail to state a claim for relief under Rules 12(b)(6) and Rule 9(b), which
requires a heightened pleading standard for claims sounding in fraud.  (*See* Compl. ¶ 175 ("the
Individual Defendants' wrongful actions were done maliciously, oppressively, and with intent
to defraud").)  To allege a direct claim against individual directors, a plaintiff must have

"suffered an injury distinct from the corporation" and "[t]he remedy that a shareholder seeks must benefit the shareholder as an individual, not the corporate entity." *See Oliveira v. Sugarman*, 451 Md. 208, 230 (2017). Driver fails to allege how it suffered an injury distinct from the corporation, as Driver was able to and did nominate its candidates for the board and Driver's requested remedy of a new election does not benefit Driver as an individual instead of the corporate entity.

Moreover, Maryland's business judgment rule applies to directors' conduct and provides that a director is presumed to have complied with the fiduciary duty standards of § 2-405.1 and grants immunity from liability. *See* Md. Code Ann., Cts. & Jud. Proc. § 5-417. To overcome this presumption, a plaintiff must allege that the directors "did not act with ordinary care under the circumstances [and] also that the director[s] did not act in good faith and did not act in a manner [they] reasonably believed was in the best interests of the company." *See Mona v. Mona Elec. Grp., Inc.*, 176 Md. App. 672, 697 (2007) (citing James J. Hanks, Jr., *Maryland Corporation Law* (2005)).

Driver's failure to allege with specificity how any individual director acted in bad faith and against the best interests of the company is fatal to its fiduciary duty claim. *See Tackney v. U.S. Naval Academy Alumni Ass'n*, 408 Md. 700, 712 (2009) ("Courts will not second-guess the actions of directors unless it appears that they are the result of fraud, dishonesty or incompetence." (citations omitted)). Accordingly, Driver's allegations fail to meet the pleading requirements under Rule 12(b)(6) and the heightened pleading standard of Rule 9(b), and Count I must be dismissed. While Driver's allegations that the directors enlisted First United's counsel to investigate Driver's possible violation of Maryland law does not state a claim for

13

breach of fiduciary duty, such allegations may still be actionable under Driver's other claims, as discussed below.

## II. Abuse of Process and Malicious Prosecution (Counts II, III, IV)

Driver asserts two claims of abuse of process against First United, one for First United's regulatory action (Count II) and one for First United's litigious action (Count III). Maryland law recognizes abuse of process actions where: (1) "the defendant willfully used process after it has issued in a manner not contemplated by law"; (2) "the defendant acted to satisfy an ulterior motive"; and (3) "damages resulted from the defendant's perverted use of process." *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 38 (1997). "A bad motive alone is not sufficient to establish an abuse of process"; rather, "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process is required…" *Id.* (quoting W. Keeton, Keeton & Prosser on the Law of Torts § 121, at 898 (5th ed. 1984)).

In Count II, Driver asserts that First United abused the regulatory process by attempting to use its status as a regulated entity to shield disclosure of its submissions to the Commissioner regarding Driver's alleged violation of Maryland law. In Count III, Driver asserts that First United abused the litigation process by filing a declaratory judgment in state court. As this Court has previously explained, abuse of process claims "require[] a perversion of court process to accomplish some end which the process was not designed to accomplish." *Painter's Mill Grille, LLC v. Brown*, Civil Action No. RDB-11-1607, 2012 WL 576640, at *9 (D. Md. Feb. 21, 2012), *aff'd*, 716 F.3d 342 (4th Cir. 2013). Defendants correctly note that Maryland law does not provide for an abuse of process claim within the context of regulatory

action.  Driver's allegations that First United improperly persuaded the Commissioner to investigate Driver's possible violation of Maryland law do not implicate any "court process." While Driver urges this Court to find that the Commissioner performs a "quasi-judicial function," it provides no authority under Maryland law for this Court to make such a finding. Accordingly, Count II must be dismissed.  Nor is First United's filing a declaratory judgment action grounds for an abuse of process claim as there is nothing improper in First United's seeking a determination of its legal rights.  *See One Thousand Fleet*, 346 Md. at 38 ("[N]o liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive may be." (citation omitted)). Consequently, Count III is also dismissed.

Driver also fails to allege a claim for malicious prosecution or, as it asserts in its Opposition, malicious use of process (Count IV).  To state a claim for malicious use of process in Maryland, a plaintiff must show: (1) a prior civil proceeding was instituted by defendant; (2) the proceeding was instituted without probable cause; (3) the proceeding was instituted by defendant with malice, i.e. with an improper motive; (4) the proceedings terminated in favor of the plaintiff; and (5) special damages were inflicted upon plaintiff.  *One Thousand Fleet*, 346 Md. at 37 (citations omitted).  "The mere expense and annoyance of defending a civil action is not a sufficient special damage or injury to sustain an action for malicious prosecution." *Id.* (quoting *North Pt. Constr. Co. v. Sagner*, 185 Md. 200, 207 (1945)).  Here, Driver has not and cannot plead the requisite elements for this claim, as the declaratory judgment action filed against it is currently pending in this Court.  *See First United v. Driver Opportunity Partners I, LP, et al.*, Civil Action No. RDB-20-2592.  Nor does Driver allege special damages it has suffered

15

or any malice or improper motive by First United in instituting its declaratory judgment action. Accordingly, Count IV must be dismissed.

## III. Defamation and Defamation *Per Se* (Counts V, VI)

Driver asserts claims for defamation (libel) and defamation (libel) *per se* against First United based on First United's alleged misrepresentations relating to Driver's alleged violation of Section 3-314 of the Financial Institutions Article of the Annotated Code of Maryland. As a preliminary matter, the parties dispute whether Maryland or New York law governs. Sitting in diversity jurisdiction, this Court must look to the choice of law rules of the forum state, Maryland, to identify the governing substantive law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L.Ed. 1477 (1941); *ITCO Corp. v. Michelin Tire Corp., Commercial Div.,* 722 F.2d 42, 49 n. 11 (4th Cir. 1983), *cert. denied,* 469 U.S. 1215, 105 S. Ct. 1191, 84 L.Ed.2d 337 (1985). "For tort claims, Maryland generally adheres to the *lex loci delicti commissi,* or place of harm, principle to determine the applicable state's substantive law." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011) (citing *Hauch v. Connor,* 295 Md. 120, 123–24, 453 A.2d 1207 (1983)).

In defamation suits, the place of harm is traditionally the location where the defamatory statement was published. *Abadian v. Lee*, 117 F. Supp. 2d 481, 485 (D. Md. 2000). Where the defamatory statements are published in multiple states, Maryland has adopted the test in the Restatement (Second) Conflict of Laws to determine that the place of harm is the state with the "most significant relationship to the occurrence and the parties." *Id.* (quoting Rest. (2d) Conflicts of Laws § 150 (1971 & Supp. 1995)). "When a corporation, or other legal person, claims that it has been defamed by an aggregate communication, the state of most significant

relationship will usually be the state where the corporation, or other legal person, had its principal place of business at the time…." *Id.* Courts employ this test as a "case-by-case balancing test," and consider "the state of plaintiff's domicile, the state of plaintiff's principal activity to which the alleged defamation relates, and the state where plaintiff suffered the greatest amount of harm." *Id.* (citations omitted).

Considering all of these factors, the Court finds that Maryland law applies. The principal activity complained of here is Defendants' conduct in relation to the Maryland Commissioner of Financial Regulation, and the greatest amount of harm has allegedly been felt by Driver here in Maryland, where nearly all the Defendants, save two individual director Defendants, are citizens of Maryland. (Compl. ¶¶ 2, 13-18, 32, 35, 36, 38-49, 56, 141.) Indeed, the defamatory statements at issue relate to Driver's activity in Maryland and its alleged violation of Maryland law. Moreover, Defendant First United primarily serves the Maryland market and holds its annual meeting of shareholders in Maryland, a meeting which is at the center of Driver's allegations. Accordingly, Maryland law governs this claim.

In order to make out a prima facie case of defamation under Maryland law, a plaintiff must show that "(1) the defendant made a defamatory statement to a third person (a requirement known as publication); (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm." *Doe v. Johns Hopkins Health Sys. Corp.,* 274 F. Supp. 3d 355, 365 (D. Md. 2017) (citing *Gohari v. Darvish*, 363 Md. 42, 767 A.2d 321, 327 (2001)).

The element of fault requires a showing of either actual malice or negligence. *Samuels v. Tschechtelin*, 135 Md. App. 483, 542-43 (2000). A statement that is defamatory *per se* and

published with actual malice does not require a showing of harm, whereas a negligent statement does require such a showing. *See KDSTI Slassi Tewahdo Church v. Ghebreamlak*, 2008 WL 11366449, at *3 (D. Md. July 17, 2008).

Maryland law recognizes the following distinction between defamation *per* se and defamation, otherwise known as defamation *per quod*:

> In the case of words or conduct actionable *per se,* their injurious character is a self-evident fact of common knowledge of which the court takes judicial notice and need not be pleaded or proved. In the case of words or conduct actionable only *per quod,* the injurious effect must be established by allegations and proof of special damage and in such cases it is not only necessary to plead and show that the words or actions were defamatory, but it must also appear that such words or conduct caused actual damage.

*M & S Furniture Sales Co. v. Edward J. DeBartolo Corp.,* 241 A.2d 126, 128 (Md.1968); *accord Metromedia, Inc. v. Hilman,* 400 A.2d 1117, 1119 (Md.1979).

Statements that constitutes defamation *per se* include those which "disparage[] the business reputation of a plaintiff," *S. Volkswagen, Inc. v. Centrix Fin., LLC¸* 357 F. Supp. 2d 837, 843 (D. Md. 2005), and those which "falsely impute criminal conduct to a plaintiff," *KDSTI,* 2008 WL 11366449 at *4. Whether a statement is defamation *per se* is a question of law for the Court, but "if the Court determines that the statement is not defamation *per se*, it is for the jury to determine whether the statement does, in fact, carry defamatory meaning." *KDSTI,* 2008 WL 11366449 at *4.

Driver's allegations suffice to state claims for both defamation and defamation *per se*. Driver alleges that First United represented to shareholders and the SEC that Driver had violated Section 3-314 of the Financial Institutions Article of the Annotated Code of Maryland and could not vote its shares for five years when, in fact, the Commissioner allegedly never

determined that Driver violated that statute.  (Compl. ¶¶ 20-21, 141, 201-217.)  This statement was publicized by First United in its May 20, 2020 supplemental proxy statement, asserting that the Commissioner "concluded…that there is sufficient evidence to find" that Driver violated Section 3-314, that Driver cannot exercise its voting shares for five years, that First United did not instigate the investigation, that Driver was "found to be in violation of Maryland law," and that Driver was not operating "within the confines of the law."  (*Id.* ¶ 141.) These statements suffice for Driver to state a claim for defamation *per se*, as Driver alleges these statements, which explicitly state that Driver violated the law, harmed its reputation and ultimately undermined its attempt to nominate its directors to the board and to garner a profitable sale of the company.   Driver also alleges that First Untied acted with actual malice by "design[ing] and encourage[ing] a finding by the Commissioner that Driver had violated FI § 3-314, so that First United would not have to count Driver's votes at the upcoming annual meeting, and would not have to recognize Driver's nominees as candidates for election." (Compl. ¶ 73.)  Driver need not provide a basis for damages on this claim because such damages are presumed.  *See Shabazz v. Bob Evans Farms, Inc.*, 163 Md. App. 602, 641 (2005).

As mentioned above, however, to establish a defamation *per quod* claim, a plaintiff must allege actual damages.  *See M&S Furniture Sales*, 241 A.2d at 128.  Further, actual damages must be alleged "with some particularity."  *Gooch v. Maryland Mech. Sys., Inc.*, 567 A.2d 954, 960 (Md. App. 1990).  The Court is satisfied that Driver's allegations that it suffered harm by the diminishment in value of its shares as a result of First United's alleged defamatory statements, in addition to the reputational harm Driver has suffered, suffice to plead actual damages.  *See Jacron Sales Co., Inc. v. Sindorf*, 276 Md. 580, 587 (1976) (actual damages may be alleged based

on economic injury and "may include 'impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.'") (citation omitted).

In opposition, Defendants assert that, even if Driver has successfully established its defamation claims, that Defendants would be protected by the affirmative defense of a conditional privilege. In Maryland, a defendant in a defamation suit may assert a qualified or conditional privilege. *See, e.g., Woodruff v. Trepel,* 725 A.2d 612, 617 (Md. Ct. Spec. App. 1999), *cert. denied,* 731 A.2d 440 (1999). As the Maryland Court of Appeals has explained:

> The common law conditional privileges rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest.... Specifically, the common law recognized that a person ought to be shielded against civil liability for defamation where, in good faith, he publishes a statement in furtherance of his own legitimate interests, or those shared in common with the recipient or third parties, or where his declaration would be of interest to the public in general.

*Gohari v. Darvish,* 767 A.2d 321, 328 (Md. 2001) (quoting *Marchesi v. Franchino,* 387 A.2d 1129, 1131 (Md.1978)); *see also McDermott v. Hughley,* 561 A.2d 1038, 1046 (Md.1989) ("A statement is accorded a qualified privilege only when the occasion shows that the communicating party and the recipient have a mutual interest in the subject matter, or some duty with respect thereto.") (citation and internal quotation marks omitted). Although the existence of a qualified privilege is a question of law for the court, whether that privilege has been abused is ordinarily left for the jury to decide. *Id.* at 333; *see also General Motors Corp. v. Piskor,* 352 A.2d 810, 816 (Md.1976).

Given the early stage of this case, the Court finds it inappropriate to determine the applicability of First United's asserted privilege. *See, e.g., KDSTI,* 2008 WL 11366449 at *4

("any assertion of privilege is inappropriate at the pleading stage").  Accordingly, the Motion to Dismiss is DENIED as to Counts V and VI, which remain.

### IV. Intentional Interference with Prospective Business Relations (Count VII)

To state a claim for intentional interference with prospective business relations, a plaintiff must allege (1) intentional and willful acts; (2) calculated to cause damage to plaintiff; (3) done to cause damage and loss, without right or justifiable cause by defendant (which constitutes malice); and (4) damage. *Press v. United States*, No. JKB-17-1667, 2018 WL 1211537 (D. Md. Mar. 8, 2018).  Plaintiff adequately alleges this tort with its allegations that, *inter alia*, Defendants willfully encouraged the Commissioner to investigate Driver's potential violation of Maryland law and publicized such investigation to its shareholders and the general public to undermine Driver and deter its attempt to explore a sale of the company (Compl. ¶¶ 16, 17, 20, 22, 25-26, 28-30, 80-89); that Defendant Rodeheaver took steps to prevent any potential buyer from making a formal proposal to the board, stating that First United was "not for sale" (*id.* ¶ 28); and that Defendants enlisted political help from Maryland governmental officials to pressure the Commissioner into taking action against Driver under Md. Code Ann., Fin. Inst. § 3-314 (*id.* ¶¶ 96-99).  All of these actions were allegedly taken to delegitimize Driver's relationship with other shareholders, potential buyers, and nominees to the board, in addition to purportedly damaging Driver's economic expectancy of a higher share price from a potential buyer.  Accordingly, the Motion to Dismiss is DENIED as to Count VII, which remains.

### V. Unfair Competition (Count VIII)

Driver asserts that the same allegations constituting intentional interference with prospective business relations also constitute unfair competition. Maryland recognizes the tort of unfair competition because "no one … is justified in damaging or jeopardizing another's business by fraud, deceit, trickery, or unfair methods of any sort." *Baltimore Bedding Corp. v. Moses*, 182 Md. 229, 236-37 (1943). "Acts that can constitute unfair competition include those that 'substantially interfere[] with the ability to compete … or conflict [] with accepted principles of public policy.'" *Brightview Grp. v. Teeters*, 441 F. Supp. 3d 115, 134-35 (D. Md. 2020) (quoting *Paccar Inc. v. Elliot Wilson Capitol Trucks LLC*, 905 F. Supp. 2d 675, 691 (D. Md. 2012)). What constitutes unfair competition in a given case is governed by that case's particular facts and circumstances. *Id.* Here, Driver's allegations that First United "competed" with Driver by attempting to disenfranchise Driver's voting rights does not state a claim for unfair competition. First, there are no allegations that Driver and First United are "competitors," as that term is understood in relation to the tort. *See Baltimore Bedding Corp.*, 182 Md. at 236-37 (unfair competition applies to "all cases of unfair competition in the field of business"); *see also* Rest. (3rd) of Unfair Competition § 1 (1995) ("One who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other for harm unless" that harm relates to deceptive marketing, trademark infringement, appropriation of trade secrets, or acts prohibited under federal or state statutes). Second, Driver's allegations more appropriately state a claim for intentional interference with business relations, as discussed above, and Driver's claim for unfair competition (Count VIII) is dismissed.

### VI. Unjust Enrichment (Count IX)

Driver's claim for unjust enrichment under Count IX also fails.  To state a claim for unjust enrichment, a plaintiff must allege: (1) the plaintiff conferred a benefit upon defendant; (2) the defendant knew or appreciated the benefit; and (3) the defendant's acceptance of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without paying the value in return.  *Mona v. Mona Elec. Grp., Inc.*, 176 Md. App. 672, 695-96 (2007).  Driver asserts that its investment of nearly $5 million into First United stock and the directors' receipt of compensation and benefits constitute benefits conferred upon Defendants by Driver.  However, "merely alleging one's own loss is not enough," *Kline v. Signet Bank*, 102 Md. App. 727, 733 (1995), and there is no basis to find that the directors' receipt of regular compensation is an improper benefit.  *See Goldstein v. Berman*, Civil No. WDQ-12-2507, 2014 WL 824050 (D. Md. Feb. 28, 2014); *Froelich v. Erickson*, 96 F. Supp. 2d 507, 524 (D. Md. 2000).  Accordingly, Count IX is dismissed.

## CONCLUSION

For the reasons stated on the record at the motions hearing, and for the reasons stated above, Defendants' Motion to Dismiss and Request for Hearing (ECF No. 18) is GRANTED IN PART and DENIED IN PART.  Specifically, Counts I, II, III, IV, VIII, and IX are DISMISSED.  The remaining Counts V, VI, and VII will be renumbered as Counts I, II, and III respectively.

A separate Order follows.


Dated: January 8, 2021


_____/s/_____
Richard D. Bennett
United States District Judge